# In the United States Court of Federal Claims

**FOR PUBLICATION**

No. 26-476C
(Filed: September 9, 2026)

| | |
|---|---|
| **WILLIAM B. PETERSON III**, | ) |
| *Plaintiff*, | ) |
| v. | ) |
| **UNITED STATES**, | ) |
| *Defendant*. | ) |

*William B. Peterson III*, Waynesville, NC, pro se.

*Matthew D. Lewis*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant. With him were Brett A. Shumate, Assistant Attorney General; and Particia M. McCarthy, Director, and Steven J. Gillingham, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC.

**OPINION AND ORDER**

***BONILLA, Judge***.

Pro se plaintiff William B. Peterson III, a former enlisted member of the United States Army, seeks correction of his military records to reflect a disability retirement rather than his current administrative separation. Mr. Peterson suffers from mental health issues that were formally diagnosed during his ten months of active-duty service and prompted his separation in June 2009. The United States Department of Veterans Affairs (VA) has since rated him 100% service disabled for major depressive disorder, effective the day after his separation. The Army Board for Correction of Military Records (ABCMR or Board), for its part, upgraded his characterization of service to honorable and changed his separation code but otherwise denied relief.

Pending before the Court is plaintiff's motion for partial judgment on the administrative record pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims (RCFC), seeking a remand to the ABCMR for reconsideration of his

disability retirement claim. The government did not respond. For the reasons below, plaintiff's motion is granted.

**BACKGROUND**

Mr. Peterson enlisted in the Regular Army after graduating from high school and entered active duty on July 17, 2008. Although he signed an eight-year Military Service Obligation,[1] Private Second Class (PV2) Peterson served on active duty for less than eleven months.[2] After completing basic combat training at Fort Knox, Kentucky, PV2 Peterson served as a Signal Operations Support Specialist at Fort Benning, Georgia.[3] While on active duty, PV2 Peterson earned the National Defense Service Medal, the Army Service Ribbon, and the Army Parachutist Badge. The Army discharged PV2 Peterson on June 17, 2009, following successive mental health episodes.

In early 2009, PV2 Peterson shared certain mental health issues he was experiencing with his command and requested separation from military service. His command refused, with his immediate commander later "voic[ing] his concern about [PV2 Peterson]'s wanting to leave the Army since he had shown a great deal of potential." AR 346.[4] From March 13 through March 23 and again from April 2 through April 3, 2009, PV2 Peterson was AWOL, explaining "it used to help him if he could get away for a couple days." AR 345. PV2 Peterson sought outpatient mental health care at an Army hospital on March 26, 2009, and was escorted back to the medical facility by his command and several family members five days later. PV2 Peterson attempted suicide in his barracks on April 29, 2009, and was hospitalized until May 20, 2009. During the three-week hospitalization, PV2 Peterson reported suicidal ideation and exhibited suicidal tendencies. Prior to his release from the hospital, according to PV2 Peterson's treating civilian psychiatrist:

---

[1] The standard eight-year service commitment is typically comprised of four years of active duty followed by four years of service in the Individual Ready Reserve. *See Service Commitment: Your Army Obligation, Explained.*, U.S. ARMY, *available at* https://perma.cc/GCF2-6GWW.

[2] For clarity, and out of respect for his military service, the Court refers to plaintiff as "PV2 Peterson" during his enlistment period and "Mr. Peterson" during his civilian life. PV2 Peterson's creditable military service totaled ten months and seventeen days; he had fourteen days of lost time for being absent without leave (AWOL), discussed *infra*.

[3] According to the Army career website, Signal Operations Support Specialists "provide technical support and expertise in the operation and maintenance of communication systems[;] . . . install, configure, and troubleshoot tactical signal equipment such as radios and data transmission devices[;] . . . [and] work closely with tactical military teams to ensure reliable and efficient communication for military operations." *Signal Operations Support Specialist 25U*, U.S. ARMY, *available at* https://perma.cc/SSZ6-E9ZJ.

[4] "AR __" is a citation to the administrative record.

> It was determined and discussed with his command that it did not appear likely, even with increased participation in treatment, that [PV2 Peterson] was going to be able to adapt to continued military service and a recommendation was made to proceed with a[n Army Regulation (Army Reg.) 635-200 ¶] 5-17 separation.

AR 346; *accord* AR 349 ("[T]he consensus of the [medical] treatment team is that [PV2 Peterson] does not at present possess the mental stability to adjust to military life. . . . This soldier is therefore recommended for ADMINISTRATIVE separation from service [in accordance with] Chapter 5-17, A[rmy] R[eg.] 635-200. There is no indication for a medical separation.").

On May 26, May 29, and June 2, 2009, the Army notified and counseled PV2 Peterson that he was being considered for administrative separation due to a "Physical or Mental condition that interferes with duty" under Army Reg. 635-200 ¶ 5-17.[5] AR 340–43, 364. Of note, a DD Form 2808 (Report of Medical Examination) from a pre-separation medical examination conducted on May 28, 2009, documents PV2 Peterson's diagnoses of depression, anxiety, and insomnia; records a psychiatric PULHES score of 3 indicating "one or more medical conditions or physical defects that may require significant limitations";[6] and states that PV2 Peterson "IS NOT QUALIFIED FOR SERVICE." AR 352. Enlistment records dated June 2, 2009 (i.e., five days later), however, record a psychiatric PULHES score of 1 (i.e., "high level of medical fitness") and inaccurately state that PV2 Peterson's "last physical exam" was on June 15, 2007. AR 374.

On June 8, 2009, PV2 Peterson's immediate commander formally notified him that the administrative separation had been initiated. Eight days later, after reviewing the separation packet, PV2 Peterson's command/separation approval authority directed his administrative separation. Notwithstanding unanimous

[5] The May 29, 2009 counseling acknowledgment form that PV2 Peterson signed identified the reason for his discharge as "Physical or Mental condition that interferes with duty," rather than the other three pre-printed options: "Hardship Discharge," "Pre-existing Medical Condition," or "Service Connected Disability Discharge." AR 364. PV2 Peterson's Election of Rights form, executed on June 11, 2009, after meeting with his military consulting counsel, similarly identified the basis for discharge as "Other Designated Physical or Mental Conditions." AR 335.

[6] P-U-L-H-E-S is a rough acronym documenting a soldier's medical profile, comprised of: physical capacity (P), upper extremities (U), lower extremities (L), hearing-ears (H), vision-eyes (E), and psychiatric (S). Army Reg. 40-501, Table 7-1 (Dec. 14, 2007). Service members are scored from 1 to 4 in each category, with 1 being the most fit and 4 being the least fit. "An individual having a numerical designation of '1' under all factors is considered to possess a high level of medical fitness." *Id.* ¶ 7-3(d)(1). A score of 2 "indicates . . . some medical condition or physical defect that may require some activity limitations." *Id.* ¶ 7-3(d)(2). A score of 3 indicates "one or more medical conditions or physical defects that may require significant limitations." *Id.* ¶ 7-3(d)(3). And a score of 4 indicates "one or more medical conditions or physical defects of such severity that performance of military duty must be drastically limited." *Id.* ¶ 7-3(d)(4).

recommendations from PV2 Peterson's immediate and intermediate commanders that his service be characterized as honorable, the commanding officer instructed that PV2 Peterson receive a general (under honorable conditions) discharge. PV2 Peterson's DD Form 214 (Certificate of Release or Discharge from Active Duty) documented the basis for his separation as a "CONDITION, NOT A DISABILITY" that interfered with performance of duty. AR 366. His reentry code 3 disqualified PV2 Peterson from automatic reenlistment absent a waiver. *See Martinez v. United States*, No. 23-1928, 2024 WL 2972892, at *2 (Fed. Cl. June 12, 2024). His discharge took effect on June 17, 2009. Throughout PV2 Peterson's administrative separation proceedings, he was never referred to the Disability Evaluation System (DES).[7]

Before his discharge, PV2 Peterson applied for disability compensation from the VA, claiming a service-connected psychiatric disorder (i.e., major depressive disorder). The VA denied his application on September 27, 2010, citing Mr. Peterson's failure to complete and return certain required forms. Over a decade later, on May 10, 2021, Mr. Peterson filed a supplemental claim for VA benefits. The VA initially assigned him a 70% disability rating for service-connected major depressive disorder, later increasing his rating to 100%, effective September 14, 2021. On March 11, 2024, the VA Board of Veterans' Appeals concluded Mr. Peterson was entitled to a June 18, 2009 effective date (i.e., the day after his discharge).

Between February 17, 2022, and October 19, 2023, Mr. Peterson filed a series of applications with the ABCMR and the Army Discharge Review Board seeking an upgrade in characterization of service, changes to the narrative reason for separation and separation code to reflect a disability retirement, and medical retirement pay retroactive to his separation. The ABCMR granted partial relief on February 8, 2024, upgrading Mr. Peterson's characterization of service to honorable and changing his separation code to "JFF," denoting Secretarial Authority as the narrative reason for separation.[8] AR 117 (updated DD Form 214). The Board otherwise denied relief. Evaluating Mr. Peterson's disability retirement claim, the Army Review Board Agency (ARBA) Behavioral Health Advisor concluded:

---

[7] A DES referral would have included referral to a Medical Evaluation Board (MEB) and, if the MEB found PV2 Peterson did not meet medical retention standards, subsequent referral to a Physical Evaluation Board (PEB) for determinations as to his fitness to serve and, if applicable, eligibility for disability retirement. Army Reg. 635-40 ¶¶ 2-10, 4-13(a), 4-17(a) (Feb. 8, 2006). Additional administrative reviews of MEB and PEB decisions would have also been available. *Id.* ¶¶ 2-10 to 2-13. Under the legacy DES, military branches conducted these evaluations independently of the VA. DES has since been replaced by the Integrated Disability Evaluation System (IDES), whereby the VA and Department of Defense "share information and . . . complete each agency's respective process simultaneously, without the need for duplicative exams and ratings." *White v. United States*, 179 Fed. Cl. 609, 614 (2026) (footnote omitted) (quoting *Integrated Disability Evaluation System (IDES)*, U.S. DEP'T VETERANS AFFS., *available at* https://perma.cc/2YAU-36NU).

[8] The Board waived the three-year application deadline codified at 10 U.S.C. § 1552(b) in the interest of justice.

> [T]here is no evidence in the record that [Mr. Peterson]'s [behavioral health] condition failed [the] medical retention standards of A[rmy] R[eg.] 40-501 Chapter 3, and [he] therefore [presents] insufficient evidence to support medical retirement due to disability. [Mr. Peterson]'s Multidisciplinary Discharge Sheet dated 20 May 2009 clearly indicates MEB "No."

AR 289.[9] In so concluding, the ARBA made no mention of the May 28, 2009 DD Form 2808 that documented PV2 Peterson's psychiatric PULHES score of 3 and found him "not qualified for service." *Compare id.*, *with* AR 352. The ABCMR agreed with the ARBA medical review in a decision issued on March 11, 2024:

> The Board concurred with the conclusion of the medical review that the evidence does not support a conclusion that [Mr. Peterson] had a condition that would have been a basis for his referral to [DES]. The Board determined the evidence does not support correction of the record to show he was retired for disability.

AR 398. In its decision, the ABCMR misdated the DD Form 2808 documenting PV2 Peterson's psychiatric PULHES score of 3 to May 28, *2008*, rather than the actual date of May 28, *2009*. *Contrast* AR 390, *with* AR 352. The ABCMR noted the diagnoses of depression, anxiety, and insomnia listed on that form but did not acknowledge—let alone address—the psychiatric PULHES score of 3. The ABCMR decision also contains no discussion of whether that medical report warranted a DES referral despite recognizing the examining doctor's finding that PV2 Peterson was not qualified for service. Mr. Peterson's DD Form 214 was amended consistent with the partial relief afforded by the Board on March 12, 2024.

After the Board of Veterans Appeals adjusted the effective date of Mr. Peterson's major depressive disorder disability to June 8, 2009, Mr. Peterson filed another application with the ABCMR on June 26, 2024, again requesting a referral to DES and a disability retirement. The ABCMR denied relief, concurring with the ARBA Behavioral Health Advisor's April 24, 2025 opinion that there was insufficient medical evidence to merit a DES referral. The ARBA opinion again omitted any mention of the May 28, 2009 DD Form 2808 documenting PV2 Peterson's psychiatric PULHES score of 3; in turn, the ABCMR again misdated the medical report to 2008 rather than 2009, did not acknowledge the psychiatric PULHES score of 3, and failed to discuss whether the report warranted a DES referral. By letter

[9] The referenced Multidisciplinary Discharge Sheet dated May 20, 2009, summarizing PV2 Peterson's three-week hospitalization, includes the following data relevant to his then-impending administrative separation: "Disposition: Discharge (from hospital) to Unit to out-process from the Army," "Disposition: A[rmy] R[eg.] 635-200 Chapter 5-17," and "Medical Board: No." AR 348 (cleaned up).

dated December 21, 2025, the Board notified Mr. Peterson of its decision. Mr. Peterson filed this action on March 25, 2026.

## ANALYSIS

I. Legal Standard

Mindful that Mr. Peterson is proceeding pro se, the Court construes his pleading liberally. *Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005) (citing cases). That said, in accordance with Rule 12(h) of the Rules of the United States Court of Federal Claims: "If the court determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action." RCFC 12(h)(3); *accord Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004) ("Subject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte*." (citing *Fanning, Phillips & Molnar v. West*, 160 F.3d 717, 720 (Fed. Cir. 1998))).

In adjudicating a motion for judgment on the administrative record under RCFC 52.1, the Court resolves factual disputes as it would at trial: by making factual findings in accordance with the weight of the evidence presented. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1353–54 (Fed. Cir. 2005). A decision of the ABCMR, however, "may only [be] set aside . . . if it was 'arbitrary or capricious, unsupported by substantial evidence, or otherwise not in accordance with law' . . . ." *See Doyon v. United States*, 58 F.4th 1235, 1242 (Fed. Cir. 2023) (quoting *Fisher v. United States*, 402 F.3d 1167, 1180 (Fed. Cir. 2005)). A military correction board decision is arbitrary and capricious

> when the agency decision-maker "entirely fail[s] to consider an important aspect of the problem, offer[s] an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*Kelly v. United States*, 69 F.4th 887, 894 (Fed. Cir. 2023) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "The Court will uphold a decision of 'less than ideal clarity[]' if the Court can reasonably discern the Board's actions." *Dillard v. United States*, 165 Fed. Cl. 214, 227 (2023) (citing *Sokol v. United States*, 120 Fed. Cl. 144, 151 (2015)), *quoted in Martin v. United States*, 175 Fed. Cl. 239, 276 (2025); *accord Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974).

Relief from a decision by the ABCMR may not be granted unless a plaintiff demonstrates by "cogent and clearly convincing evidence" that the ABCMR's decision should be set aside. *Mote v. United States*, 110 F.4th 1345, 1354 (Fed. Cir. 2024) (quoting *Dodson v. United States*, 988 F.2d 1199, 1204–05 (Fed. Cir. 1993)) (additional citation omitted). Reviewing courts "do not substitute [their] judgment for that of the military 'when reasonable minds could reach differing conclusions on

the same evidence.'" *Id.* (quoting *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983)). "Moreover, 'military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs.'" *Martin*, 175 Fed. Cl. at 262 (quoting *Dodson*, 988 F.2d at 1204) (additional citations omitted); *see Voge v. United States*, 844 F.2d 776, 779 (Fed. Cir. 1988) ("Judicial deference must be 'at its apogee' in matters pertaining to the military and national defense." (quoting *Rostker v. Goldberg*, 453 U.S. 57, 70 (1981)) (additional citation omitted)).

II. Subject-Matter Jurisdiction

Mr. Peterson's claim is subject to a jurisdictional six-year statute of limitations. *See Real v. United States*, 906 F.2d 1557, 1560 (Fed. Cir. 1990) (citing 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.")); *Johnson v. United States*, 184 F.4th 1350, 1355 (Fed. Cir. 2026) ("Because the Tucker Act is a waiver of the government's sovereign immunity, its statute of limitations is jurisdictional and not subject to equitable tolling or waiver." (citing *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 136–39 (2008))). That is, if Mr. Peterson's disability retirement claim accrued more than six years before he filed this lawsuit on March 25, 2026, the Court must dismiss his claim for lack of subject-matter jurisdiction under RCFC 12(h)(3).

In general, disability retirement claims accrue when "the appropriate board either finally denies such a claim or refuses to hear it." *Johnson*, 184 F.4th at 1355 (first quoting *Jones v. United States*, 30 F.4th 1094, 1100–01 (Fed. Cir. 2022); and then citing *Chambers v. United States*, 417 F.3d 1218, 1224 (Fed. Cir. 2005)). If that rule applies here, Mr. Peterson's claim accrued on March 11, 2024 (i.e., the date the ABCMR first denied his disability retirement claim), and this action is not time-barred. But under what has become known as the *Real* exception to the general rule, if a servicemember has actual or constructive knowledge of a disability entitling them to retirement pay at the time of separation, did not demand pre-separation board review, and was otherwise aware that the failure to demand a board review prior to discharge would result in their being ineligible for disability benefits, then their disability retirement claim accrues upon separation. *See Real*, 906 F.2d at 1562 & n.6; *Chambers*, 417 F.3d at 1226 ("The appropriate inquiry under *Real*, therefore, is whether at the time of his separation from the Army in 1970, [plaintiff] knew that he was entitled to disability retirement due to a permanent disability that was not a result of his intentional misconduct and was service-connected."). Because PV2 Peterson did not demand any pre-separation board review of his disability retirement claim and, instead, first claimed disability retirement more than twelve years post-separation, the Court considers whether the *Real* exception applies here.

The United States Court of Appeals for the Federal Circuit has withheld judgment on whether the *Real* exception is a one- or two-pronged inquiry. *Pohl v.*

*United States*, No. 22-2080, 2023 WL 2982476, at *5 (Fed. Cir. Apr. 18, 2023). The first prong, which is unquestionably a required part of the analysis, is satisfied where a "servicemember knew or should have known at the time of discharge that he was 'suffering from a permanently disabling disorder.'" *Bee v. United States*, 181 F.4th 1348, 1353 (Fed. Cir. 2026) (first quoting *Real*, 906 F.2d at 1563; and then citing *Reaves v. United States*, No. 21-2306, 2022 WL 412740, at *3 (Fed. Cir. Feb. 10, 2022)). The second prong, whose instrumentality to the analysis is less certain, is satisfied where a servicemember has been "made aware that his failure to demand a board review before discharge will result in potentially missing out on disability benefits." *Pohl*, 2023 WL 2982476, at *4.

While the inclusion of the second prong has yet to be conclusively decided by the Federal Circuit, *see Pohl*, 2023 WL 2982476, at *5, the undersigned agrees with the weight of authority that the *Real* exception bars a claim only when both prongs are met, *see Purvis v. United States*, 77 F. App'x 512, 514 (Fed. Cir. 2003) ("[T]he awareness of the disability *coupled with* awareness of the review board process causes the disability claim to accrue at that time." (emphasis added) (first citing *Friedman v. United States*, 310 F.2d 381, 402 (Ct. Cl. 1962); and then citing *Miller v. United States*, 361 F.2d 245 (Ct. Cl. 1966))); *Real*, 906 F.2d at 1562 & n.6 ("[The analysis of w]hether the veteran's knowledge of the existence and extent of his condition at the time of his discharge was sufficient to justify concluding that he waived the right to board review of the service's finding of fitness by failing to demand a board prior to his discharge . . . assumes that the service member has been informed that the failure to demand a board prior to discharge will result in his being ineligible for disability benefits from the service."); *see generally Benitez v. United States*, 171 Fed. Cl. 218, 223–25 (2024). *But see Ullmann v. United States*, 123 F. App'x 970, 973 (Fed. Cir. 2004) ("[W]hen a veteran is aware of his disability at the time of discharge, does not request or receive a board hearing, and has knowledge that the disability is permanent, service-connected, and not the result of his own misconduct, the statute of limitations begins to run at the time of discharge." (citing *Real*, 906 F.2d at 1563)).

The Court finds PV2 Peterson knew or, at a minimum, reasonably should have known enough about the severity and permanence of his disability to satisfy prong one. That his major depressive disorder led to multiple suicide attempts and hospitalizations is strong evidence that the severity of his condition was clear. And, as one of his providers remarked in a letter dated May 11, 2009, "[g]iven [PV2 Peterson's] lack of improvement and despite ongoing psychiatric treatment, . . . it [wa]s unlikely that [PV2 Peterson] would ever be able to resume being a productive member of the military." AR 253. This is strong evidence that PV2 Peterson should have been aware that his condition was not just severe, but also permanent. PV2 Peterson's pre-discharge application for disability compensation from the VA claiming service-connected psychiatric disorder (i.e., major depressive disorder) underscores this finding.

The Court, however, has not been presented with any evidence PV2 Peterson was aware that a pre-separation disability retirement board was available to him, such that his inaction could be construed as waiver. On the contrary, record evidence indicates PV2 Peterson reasonably believed "that [he] was not entitled to have [his] case considered by an administrative board because [he] did not have 6 or more years of active and reserve service . . . ." AR 279. This was true as to the availability of an administrative separation board, *see* Army Reg. 635-200 ¶ 9-1(b) (June 6, 2005), but not necessarily true as to an MEB or a PEB, which together could have evaluated whether a disability retirement was merited. On this record, it appears PV2 Peterson was unaware of the availability of an MEB and PEB and may have mistakenly, but reasonably, believed an administrative separation board—to which he was not entitled—was the only board that could review separations and entertain disability retirement claims. *See White*, 179 Fed. Cl. at 614 ("IDES participants do not apply or elect to participate in IDES.") (citation omitted). The Court thus concludes that, at this juncture, prong two is not satisfied, and PV2 Peterson's claim may proceed. *Cf. Benitez*, 171 Fed. Cl. at 231.

## III. ABCMR Decision

Mr. Peterson argues the Board's December 21, 2025 decision denying disability retirement was arbitrary and capricious because it failed to properly consider the May 28, 2009 DD Form 2808 documenting his diagnosed depression, anxiety, and insomnia, recording a psychiatric PULHES score of 3, and opining he was not qualified for military service. The Court agrees.

DD Form 2808 is "[t]he required form for all Army military medical examinations," such as PV2 Peterson's May 28, 2009 separation examination. Army Reg. 40-501 ¶ 8-12(a) (Dec. 14, 2007). Box 74.a. of DD Form 2808 asks the examining medical professional to determine whether the servicemember is qualified for service "based on whether the examinee meets the medical retention standards of chapter 3." *Id.* ¶ 8-12(b)(7). That is, by checking "is not qualified for service" in Box 74.a., AR 352, PV2 Peterson's examining physician opined PV2 Peterson did not meet applicable medical retention standards. Chapter 3 of Army Reg. 40-501, which provides the applicable retention standards, provides:

> Soldiers with conditions listed in this chapter[10] who do not meet the required medical standards *will be evaluated by an MEB* as defined in A[rmy] R[eg.] 40-400 and *will be referred to a PEB* as defined in A[rmy] R[eg.] 635-40 with the following caveats:
>
> . . .

[10] These disqualifying conditions include mood disorders and anxiety. Army Reg. 40-501 ¶ 3-32 to 3-33 (Dec. 14, 2007).

> *b*. Soldiers pending separation in accordance with the provisions of A[rmy] R[eg.] 635-200 . . . who do not meet medical retention standards *will be referred to an MEB*. In the case of enlisted Soldiers, the physical disability processing and the administrative separation processing will be conducted in accordance with the provisions of A[rmy] R[eg.] 635-200 . . . .

Army Reg. 40-501 ¶ 3-3 (Dec. 14, 2007) (footnote and emphasis added). Army Reg. 635-200, in turn, provides that, in general, "disposition through medical channels takes precedence over administrative separation processing." Army Reg. 635-200 ¶ 1-33 (June 6, 2005). Since Army Reg. 635-200 is the precise regulation under which PV2 Peterson was separated, an MEB referral would have taken precedence over his administrative separation.

Understanding the May 28, 2009 separation examination where PV2 Peterson was diagnosed with depression, anxiety, and insomnia and assigned a psychiatric PULHES score of 3 to constitute a determination that he did not meet medical retention standards under chapter 3 of Army Reg. 40-501, the Court cannot discern why PV2 Peterson was not referred into DES (i.e., to an MEB in the first instance and, if applicable, to a PEB thereafter). Under the regulatory scheme outlined above, a DES referral was seemingly required. Yet the ABCMR failed to explain why that record did not trigger a DES referral. While the Board is not required to explicitly discuss each piece of record evidence, *Osburn v. United States*, 171 Fed. Cl. 38, 45 (2024) (citations omitted), *aff'd*, No. 24-2025, 2025 WL 3719434 (Fed. Cir. Dec. 23, 2025), the Board's failure to analyze the May 28, 2009 DD Form 2808 is a "fail[ure] to consider an important aspect of the problem," *Kelly*, 69 F.4th at 894 (alteration added) (quoting *State Farm*, 463 U.S. at 43). That the ABCMR misdated the record to May 28, *2008*, rather than May 28, *2009* (i.e., immediately pre-separation) underscores that the Board did not appreciate its significance. The Court must therefore vacate the ABCMR's December 21, 2025 decision denying Mr. Peterson's disability retirement claim and remand this case to the Board for further proceedings.

On remand, the ABCMR shall consider whether, under applicable regulations, Mr. Peterson is entitled to a retroactive DES or IDES referral for consideration of his disability retirement claim. In its written decision, the ABCMR shall address the May 28, 2009 DD Form 2808 discussed above and determine whether that form, in light of the other record evidence, warrants DES or IDES referral.

## CONCLUSION

For the foregoing reasons,

(1) Mr. Peterson's motion for partial judgment on the administrative record (ECF 16) is granted.

(2) Pursuant to RCFC 52.2(a), this military pay case is remanded to the ABCMR for further proceedings consistent with this opinion.

(3) Pursuant to RCFC 52.2(b)(1)(A), the ABCMR must reconsider Mr. Peterson's disability retirement claim.

a. If the ABCMR again denies Mr. Peterson the relief sought, the ABCMR must issue a written decision in full compliance with applicable statutes, instructions, and regulations, consistent with this opinion.

b. In the case of a denial, the ABCMR's written decision must include a discussion section that includes, but is not limited to, a determination of whether the May 28, 2009 DD Form 2808, in light of the other record evidence, warrants DES or IDES referral.

(4) Pursuant to RCFC 52.2(b)(1)(B), the ABCMR shall complete its remand review within **120 days**. This deadline is subject to good faith extension under RCFC 52.2(c)(1).

(5) During the remand:

a. Pursuant to RCFC 52.2(b)(1)(C), the Clerk of Court is directed to stay all proceedings in this matter until further order of the Court. The Court will retain jurisdiction over this case during the remand period.

b. Pursuant to RCFC 52.2(b)(1)(D), defendant shall file a status report on or before **October 9, 2026**, and **every 30 days** thereafter, during the remand period.

c. Pursuant to RCFC 52.2(d), within **10 days** of the conclusion of the voluntary remand proceedings before the ABCMR, the ABCMR shall serve plaintiff and defendant's counsel of record with a copy of the ABCMR's final decision and send the Court a copy of the ABCMR's final decision.

d. Pursuant to RCFC 52.2(e)(1), within **30 days** of the filing of the ABCMR's final decision on remand, the parties shall file a joint status report with the Court setting forth the parties' position(s) regarding whether further litigation of this matter is necessary. If further proceedings are warranted, the parties shall include a proposed schedule to govern this case going forward.

(6) The Clerk of Court shall serve a copy of this opinion and order on the Army Board for Correction of Military Records:

Joseph P. Lister
Director, Army Board for the Correction of Military Records
Army Review Board Agency
251 18th Street South – Suite 385
Arlington, VA 22202-3531

It is so **ORDERED**.

Armando O. Bonilla
Judge